IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE:   LOGAN MEDICAL FOUNDATION
dba Logan General Hospital,

                Debtor.

RIDWAN TARABISHI,

                Appellant,

v.                                                  CIVIL ACTION NO.  2:04-cv-1008

LOGAN MEDICAL FOUNDATION,

                Appellee.

**MEMORANDUM OPINION AND ORDER**

The Appellant, Dr. Ridwan Tarabishi, appeals from a final order of the bankruptcy court denying his Application for Allowance of an Administrative Claim in a case filed under Chapter 11 of Title 11 of the United States Code by Logan Medical Foundation in the United States Bankruptcy Court for the Southern District of West Virginia.  The court found that said Application and Dr. Tarabishi's Administrative Expense Claim were time-barred.  The Appellant argues that good cause exists to warrant the allowance of his  claim because (1) he had no actual knowledge of the bar date; (2) he had moved to Cincinnati and therefore did not see the local notice of publication concerning the claims bar date;  (3) the Appellee was, and presumably still is, in possession of the records necessary for the Appellant to state his claim as a sum certain; and (4) the Appellant relied upon the assurances of the Appellee's representatives that the matter would be resolved amicably and that he

would be paid.  For the reasons discussed herein, I **FIND** no abuse of discretion and **AFFIRM** the bankruptcy's court denial of Mr. Tarabish's Application for Allowance of an Administrative Claim.

### A.  Background

The Appellee, Logan Medical Foundation, Inc., filed a petition for Chapter 11 bankruptcy on October 22, 1998.  On May 9, 2001, the bankruptcy court set June 15, 2001 as the bar date by which claims for administrative expenses incurred prior to May 31, 2001 were to be filed (initial bar date).  On February 3, 2003, the bankruptcy court established March 3, 2003 as the bar date by which claims for administrative expenses arising from June 1, 2001 through December 31, 2002 were to be filed (final bar date).  In each instance, the bankruptcy court ordered notice consisting of individual mailings and publications in the *Charleston Gazette* and the *Logan Banner*.

On November 1, 1999, the Appellant entered into an employment contract with the Appellee to work as a physician for the Appellee.  The Appellant worked for the Appellee until January 2002, when the Appellant relocated to Cincinnati.  Pursuant to the terms of the contract, the Appellant was to be compensated with a salary of $160,000 per annum, plus performance bonuses in the amount of two-thirds of the professional fees collected by the Appellant over his direct and indirect expenses.  Although the performance bonuses were to be paid quarterly, the Appellant only received one such bonus, in the amount of $19,255, during the first quarter of 2001.  The Appellant claims that he is owed performance bonuses for all other quarters during the period of time that he worked for the Appellee, which encompasses both periods of time covered by the bar dates previously discussed.  The Appellant is unsure of the exact amount owed, but estimates it to be between $50,000 and $75,000.

On June 21, 2002, the Appellant sent a letter through counsel to the Appellee seeking information pertaining to the bonuses allegedly owed to the Appellant both prior to and after the initial bar date. However, the Appellant did not file a request for allowance of an administrative expense claim until April 14, 2004, long after both bar dates had passed. At a hearing held on June 23, 2004, the bankruptcy court found that the Appellant sat on his rights for two years and denied the Appellant's application. The Appellant filed a notice of appeal with the bankruptcy court on July 26, 2004 and an amended notice of appeal on August 4, 2004. The Appellant filed an untimely brief in support, but I will nevertheless consider it as the Appellee responded with no objection. The Appellant did not file a reply brief.

### B. Jurisdiction

This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1), which authorizes district courts to hear appeals of "final judgments, orders, and decrees" entered by bankruptcy judges. In the bankruptcy context, orders are deemed to be final if they dispose of discrete disputes within the larger bankruptcy case, particularly when the order finally disposes of a creditor's claim. *See In re Saco Local Dev. Corp.*, 711 F.2d 441, 442-46 (1st Cir. 1983); *see also A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1009 (4th Cir. 1986) (applying broad view of finality of judgment for appeal purposes from district court to appellate court in bankruptcy cases).

### C. Standard of Review

A bankruptcy court's findings of fact will not be disturbed unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses. *See* Fed. R. Bank. P. 8013. Under that standard, "findings of fact will be affirmed unless [the appellate court's] review of the entire record leaves [it] with the definite and firm conviction

that a mistake has been committed." *Harman v. Levin*, 772 F.2d 1150, 1153 (4th Cir. 1985). The bankruptcy court's conclusions of law are reviewed *de novo*. *See In re Johnson*, 960 F.2d 396, 399 (4th Cir. 1996). Mixed questions of law and fact are reviewed "under a hybrid standard, applying to the factual portion of each inquiry the same standard applied to questions of pure fact and examining de novo the legal conclusions derived from those facts." *U.S. Dept. of Health & Human Services v. Smitley,* 347 F.3d 109, 116 (4th Cir. 1996)(citation omitted). Finally, decisions made in the exercise of a bankruptcy court's discretion will not be set aside unless there is plain error or an abuse of discretion. *In re Hawley Coal Mining Corp.,* 47 B.R. 392, 394 (S.D. W. Va.1984).

### D. Discussion

Bankruptcy Rule 9006(b)(1) provides that "the court for cause shown may at any time in its discretion . . . on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect." Fed. R. Bankr. Proc. 9006(b)(1). "The determination of excusable neglect 'is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include . . . the danger of prejudice to the debtor, the length of delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" *In re Clock Tower Place Investments Ltd.*, 175 F.3d 1103, \*\*2 (4th Cir. 1999)(quoting *Pioneer Investment Services Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 395 (1993)). Furthermore, "[w]e review the district court's refusal to find excusable neglect for abuse of discretion." *Id.* (citing *Heyman v. M.L. Marketing Co.*, 116 F.3d 91, 96 (4th Cir. 1997).

The Appellant argues that good cause exists to warrant the allowance of his claim because he had no actual knowledge of the claims bar date and did not see the local notice of publication concerning the bar date because he had moved to Cincinnati. I note that the Appellant raises arguments only as to the March 3, 2003 bar date without any mention of the June 15, 2001 bar date. As argued by the Appellee's counsel at the June 23, 2004 hearing, "The notice of the first bar date was made by publication in the *Charleston Gazette* and *Logan Banner*, and that would have been during the time when [the Appellant] was here and present . . . It was also posted at every bulletin in the hospital." Hr'g Tr. 9, June 23, 2004.

In *Clock Tower*, the Fourth Circuit agreed with the district court, which found the claimants had constructive notice of the bankruptcy and bar date by virtue of their employment and affiliation with the Debtors. 175 F.3d at **2. Like the claimants in *Clock Tower*, the Appellant was employed by the Appellee post-petition and during its bankruptcy case. *Id.* Moreover, in the instant case, the bankruptcy court found that the Appellant received one financial statement at the end of 2001 and that he would have received another by April of 2002, indicating that the Appellant knew of his claim well before the final bar date. Indeed, on June 21, 2002, the Appellant sent a letter through counsel to the Appellee seeking information pertaining to the bonuses allegedly owed to the Appellant. Given the extent of awareness of both his claim and the Appellee's bankruptcy status, I **FIND** that the Appellant had adequate notice.

The Appellant was aware of his claim at the latest by mid-2002, yet he did not file an application to make his claim until April of 2004. The Appellant offered no evidence to the bankruptcy court in support of his bold assertions of circumstances amounting to excusable neglect.

In making the equitable determination of whether there was excusable neglect, the bankruptcy court summarized as follows:

> The doctor's application to the Bankruptcy Court, for a case filed while he was employed, comes in April of 2004, two years after he should have actually received the final statement. The problem is, that these cases need termination and the court has to set deadlines to the parties, in order to get termination. Otherwise, these cases can go on forever. Even now, we are trying to recreate fees, adjustments, salary benefits, for a period of time that is over two years old. I will find that the doctor, having sat on his rights for two years, is estopped from, at this time, applying for the percentage benefit that is in the contract, that, in accordance with the order of this Court setting a deadline, terminates any rights that he would have had to administrative expenses.

Hr'g Tr. 10-11. Accordingly, the bankruptcy court considered the relevant circumstances cited by the Supreme Court in *Pioneer Investment* in determining whether there was excusable neglect, namely the length of the delay and whether it was within the reasonable control of the defendant and its potential impact on judicial proceedings. 507 U.S. at 395. Based on this reasoning, the bankruptcy court did not abuse its discretion in refusing to find excusable neglect and denying the Appellant's Application for Allowance of an Administrative Claim.

### E. Conclusion

Accordingly, I **FIND** no abuse of discretion and **AFFIRM** the bankruptcy's court denial of Mr. Tarabish's Application for Allowance of an Administrative Claim.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER:    August 29, 2005

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

-6-